531 A.2d 857

Arta, Inc., t/a Arthur's Catering, Appellant *v.* Ryan Corporation and City of Philadelphia, Appellee.

2

Argued February 24, 1987, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Daniel Arshack,* with him, *Bruce S. Luckman,* Of Counsel: *Sidkoff, Pincus & Green, P.C.,* for appellant.

*Barbara R. Axelrod,* Divisional Deputy in Charge of Appeals, with her, *Handsel B. Minyard,* City Solicitor, *Norma S. Weaver,* Chief Deputy City Solicitor, and *Claudia M. Tesoro,* Chief Assistant City Solicitor, for appellees.

OPINION BY JUDGE COLINS, October 1, 1987:

Arta, Inc., t/a Arthur's Catering (appellant), appeals an order of the Court of Common Pleas of Philadelphia County which (1) reduced the jury verdict obtained by appellant against the City of Philadelphia (City) from $81,427.00 to $70,841.40 to reflect the jury's apportionment of liability; (2) further reduced the verdict by $69,000, the amount of insurance proceeds received by

appellant, in accordance with Section 8553(d) of the Judicial Code (Code),[1] such provisions commonly referred to as the Political Subdivision Tort Claims Act; and (3) denied appellant's Motion for a New Trial as well as the Motion for Judgment N.O.V. filed on behalf of the City.

The events precipitating the underlying litigation in this matter are as follows. In the summer of 1980, appellant, who operates a catering business and restaurant in the City, began construction upon an addition to its existing building, ultimately to consist of a new banquet room. A construction crew unearthed a six-inch water line and halted excavation while appellant contacted the City Water Department. Department employees, after visiting the site, reported that the water line had been turned off. However, when the line was ruptured during the course of construction, water surged from the line, flooding appellant's existing facility and carrying in mud and debris.

In its resolution of appellant's ensuing litigation against the City, the jury apportioned liability in the following percentages: the construction crew,[2] 50%; the City, 37%; and appellant, 13%. In that portion of the trial concerned with damages, appellant attempted to demonstrate that it had sustained losses of damaged inventory and business property valued at $75,288.00 and lost profits in the amount of $51,230.00, consisting of (1) actual losses incurred as a result of the forced closing of the establishment during the weekend subsequent to the accident; and (2) estimated losses purportedly occasioned by the postponement of the opening of the ban-

---

[1] Act of November 26, 1978, P.L. 1399, 53 P.S. §§5311.101-5311.803, repealed by Section 333 of JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, 42 P.S. §20043. These provisions are now found in Sections 8541-8564 of the Judicial Code (Code), 42 Pa. C. S. §§8541-8564.

[2] The construction company was not a party to the litigation.

quet room, then under construction at the time of the flood.

Upon completion of the testimony, the trial court determined that appellant's evidence of damages was too speculative to submit to the jury and, *sua sponte,* issued a binding instruction limiting, as a matter of law, any recovery of lost profits to $7,527.00, such amount equalling the difference between appellant's before tax earnings as reported on its 1979 tax return, the year preceding the incident ($20,023.00) and the comparable figure on its 1980 tax return, the year of the incident ($12,496.00).

In accordance with the limitation so imposed, the jury returned a verdict in the amount of $7,527.00 in lost profits and $73,900.00 in property loss. As we previously indicated, the trial court then reduced the award to comport with the jury's apportionment of liability and further reduced the award by the amount of insurance proceeds received by appellant, in accordance with Section 8553(d) of the Code, which pertinently provides that:

> **Insurance benefits.**—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable . . . , *the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.* (Emphasis added.)

42 Pa. C. S. §8553(d). Upon the trial court's denial of post-trial motions, appellant's appeal to this Court followed.

Appellant now submits that the proffered evidence of damages was sufficiently precise to permit a jury determination on that issue, such that the trial court's issuance of a binding instruction limiting any recovery of

lost profits was in error. It further contends that the trial court erred in reducing the jury verdict by $69,000.00 without conducting an evidentiary hearing affording appellant the opportunity of presenting evidence as to the amount of insurance proceeds actually received.

"Binding instructions after the presentation of the defense's case are sustainable only where the evidence is insufficient to support the claimant's cause of action." *Stern v. Vic Snyder, Inc.*, 325 Pa. Superior Ct. 423, 437, 473 A.2d 139, 146 (1984), *citing Highland Tank and Manufacturing Co. v. Duerr*, 423 Pa. 487, 225 A.2d 83 (1966). In reviewing the sufficiency of the evidence, a court must determine whether a jury, after viewing all the evidence and all reasonable inferences arising from it in a light favorable to the plaintiff, could reasonably conclude that the elements of the cause of action had been established. *Id.* Our thorough review of the record *sub judice* reveals sufficient competent evidence in support of appellant's claim of lost profits and compels our conclusion that the trial court's issuance of a binding instruction in this matter was improper.

Generally, under Pennsylvania law:

damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. . . . Where the amount of damages can be fairly estimated from the evidence, the recovery will be sustained even though such amount cannot be determined with entire accuracy. . . . It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss.

*Hawthorne v. Dravo Corp., Keystone Div.*, 352 Pa. Superior Ct. 359, 376, 508 A.2d 298, 307 (1986), *appeals denied*, 514 Pa. 617, 521 A.2d 932 (1987), *quoting*

*Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa. Superior Ct. 90, 119, 464 A.2d 1243, 1257-1258 (1983), *petition for allowance of appeal granted,* February 27, 1984. In cases involving lost profits, both the fact and amount of loss must be established with reasonable certainty. *See Merion Spring Co. v. Muelles Hons. Garcia Torres,* 315 Pa. Superior Ct. 469, 462 A.2d 686 (1983).

In support of its damage claim, appellant proffered the testimony of Jerome Vigdor, a certified public accountant and partner in an accounting firm, who had served as appellant's accountant for some seven years.[3] Appellant also proffered a report prepared by Mr. Vigdor's accounting firm at the request of counsel which analyzed the loss of earnings sustained by appellant from both the closing of the existing facility during restoration as well as the delay in opening the proposed banquet facility.

From this report,[4] Mr. Vigdor testified that his firm reviewed appellant's "cash receipt journals, customer contracts, [and] reservations diaries which list[ed] each date of each party. For a period through 1984 we looked at a list of actual parties . . . the actual bookings for 1981 and 1982." He delineated the methodology by which the firm had estimated appellant's lost profits. In regard to estimated losses associated with the banquet facility delay, Mr. Vigdor detailed a calculation involving an assumption as to the anticipated opening date of the facility as well as consideration of its increased seating capacity, the number of parties actually booked in

---

[3] Appellant also proffered the testimony of a Mr. Weiler, owner of the establishment, and of its bookkeeper, as well as documentation of its actual losses. Neither of these witnesses clarified the issue of estimated lost profits.

[4] Our review of the record indicates that the trial judge admitted this report into evidence over objection of counsel. No argument as to its admission has here been presented.

subsequent years, and costs normally incurred by appellant in the course of operations,[5] such computation yielding an estimated loss in the amount of $46,616.00.

Mr. Vidgor also testified as to losses of $44,614.00 sustained by appellant on the weekend of the incident when it was forced to transfer three scheduled parties to its competitors. According to this accountant, the amount represented "profits [appellant] could have had on those three parties plus his actual out-of-pocket costs to pay a restaurant nearby to use their rooms [and] provide the food and so on. . . ." He did state that he could not remember the "specifics" of this computation. He also readily admitted that he did not personally review appellant's documentation of its losses and did not personally perform any of the calculations in the report, nor did he have at his disposal during the trial any of appellant's books and records upon which the report was based.

Nevertheless, we do not find, as the City suggests, that Mr. Vigdor's testimony lacks foundation so as to render it incompetent. He did indicate that the report was a product of his accounting firm and that, as a partner, he was responsible for the report and had reviewed it. He stated that a team of investigators from the firm had reviewed appellant's books and records and that the calculations had been performed by junior accountants in the firm. Such practices reflect the exigencies of modern accounting procedures and cannot render either Mr. Vigdor's testimony or the firm's report incompetent. The inconsistencies which the City wishes to

---

[5] Mr. Vigdor estimated sales revenues lost in the amount of $139,568.00 and then subtracted from that amount "the variable costs [and] direct costs," such as food, beverages, payroll, insurance, etc., to reach the final estimated loss in the amount of $46,616.00.

underscore go to the weight and sufficiency of the evidence and not to the admissibility thereof.

We reiterate that proof of damages need not rise to a level of mathematical exactness. *Delahanty; Hawthorne*. We have thoroughly reviewed the record *sub judice*. While memory may dim and inconsistencies arise, we cannot conclude that the evidence *in toto* proffered by appellant was sufficiently imprecise to warrant the trial court's issuance of a binding instruction. Because we cannot sustain the trial court's binding instruction, we are compelled to remand this matter to the trial court in order that a new trial may be conducted limited solely to the issue of damages sustained by appellant.

Appellant has also alleged error in the trial court's reduction of the jury award by an amount of $69,000.00, in accordance with Section 8553(d) of the Code, without permitting the appellant the opportunity of presenting evidence as to the amount of insurance proceeds it actually received. Appellant now argues that it actually *received* only $54,000.00 from its insurer, while the remaining $15,000.00 was paid directly to its attorneys and accountants for services rendered in obtaining payment of the claim, initially contested by the insurer as arguably falling within an exclusion in appellant's insurance policy.

Upon review of the record[6] *sub judice*, we are unable to accurately ascertain the amount of insurance pro-

___

[6] We note appellant's Supplemental Answers to interrogatories, of record, which indicate that it received $69,000.00 from its insurer on June 26, 1981. However, the Reproduced Record contains a letter from appellant's counsel indicating a revision to the Supplemental Interrogatories to provide that appellant received only $54,000.00 on that date. We are bound, of course, to consider only documentation of record, and note counsel's letter to illustrate the uncertainty surrounding the matter of appellant's receipt of insurance proceeds.

ceeds received by appellant, its accountants and attorneys. Should the newly-empaneled jury return a verdict for appellant in excess of this disputed amount, the issue of these insurance proceeds will again arise. The trial court in the instant proceeding did not permit appellant to present evidence in support of its assertion that $15,000.00 constituted attorneys' and accountants' fees, to be treated accordingly. Such omission was in error. We are mindful of the following scenario: had appellant's accountants and attorneys been compensated for services rendered in litigating the insurer's liability, comparable fees would have been incurred by the City in attempting to subrogate the claim upon entry of judgment against it. We foresee no reason why appellant should bear the cost of the City's counsel fees.

Accordingly, the order of the Court of Common Pleas of Philadelphia County is reversed insofar as the award of damages and the matter is remanded for a new trial to be held solely on the issue of damages sustained by appellant. If the jury returns a verdict in excess of $54,000.00 for appellant, the trial court is instructed to hold an evidentiary hearing to include the presentation of evidence and legal argument regarding appellant's claim of insurance proceeds.

## ORDER

AND NOW, this 1st day of October, 1987, the order of the Court of Common Pleas of Philadelphia County is reversed insofar as the award of damages. The matter is remanded to the trial court with instructions that it conduct an evidentiary hearing consistent with the foregoing opinion.

Jurisdiction relinquished.